1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| DON ROBERT PHILLIPS, | ) | Case No. CV 09-2809 JC |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

18

19   **I.    SUMMARY**

20          On April 22, 2009,  plaintiff Don Robert Phillips ("plaintiff") filed a

21   Complaint seeking review of the Commissioner of Social Security's denial of

22   plaintiff's application for benefits.  The parties have consented to proceed before a

23   United States Magistrate Judge.

24          This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; April 27, 2009 Case Management Order ¶ 5.

28   ///

1

1     Based on the record as a whole and the applicable law, the decision of the
2     Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3     ("ALJ") are supported by substantial evidence and are free from material error.[1]
4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5        **DECISION**
6            On August 7, 2006, plaintiff filed an application for Disability Insurance
7     Benefits.  (Administrative Record ("AR") 15).  Plaintiff asserted that he became
8     disabled on March 3, 2006, due to rheumatoid arthritis and acute gouty arthritis.
9     (AR 125-26).  The ALJ examined the medical record and heard testimony from
10    plaintiff, who was represented by counsel, on February 25, 2008.  (AR 26-70).
11           On April 10, 2009, the ALJ determined that plaintiff was not disabled
12    through the date of the decision.  (AR 15-25).  Specifically, the ALJ found:
13    (1) plaintiff suffered from the following severe combination of impairments:  a
14    history of tophaceous gouty arthropathy with previous involvement of the right
15    ankle, right foot, and left knee; a history of osteomyelitis; and hypertension,
16    controlled by medication (AR 17); (2) plaintiff's impairments, considered singly
17    or in combination, did not meet or medically equal one of the listed impairments
18    (AR 18); (3) plaintiff retained the residual functional capacity[2] to perform medium
19    work with certain limitations (AR 18);[3] (4) plaintiff could not perform his past
20    relevant work as a stage builder for television and theater (AR 23); (5) there are
21
22    _____
23           [1]The harmless error rule applies to the review of administrative decisions regarding
      disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
24    (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
      Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
25    application of harmless error standard in social security cases).
26           [2]Residual functional capacity is "what [one] can still do despite [one's] limitations" and
27    represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 404.1545(a).
28           [3]The ALJ found that plaintiff "is able to lift and/or carry 50 pounds occasionally and 25
      pounds frequently, sit, stand and/or walk for about six hours in an eight-hour workday.  He can
      occasionally balance.  He should not work at heights or with dangerous equipment."  (AR 18).

jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically hand packager, machine packager, and dining room attendant (AR 24-25); and (6) plaintiff's allegations regarding his limitations were not totally credible.  (AR 21-23).

The Appeals Council denied plaintiff's application for review.  (AR 1-4).

## III.  APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///

(4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

## B.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///

**IV.    DISCUSSION**

    **A.    Treating Physician's Opinion**

        **1.    Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.), as amended (1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

A treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  An ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted).  "The ALJ

5

1  must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418,

2  421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain

3  why they, rather than the [physician's], are correct." Id.; see Thomas v. Barnhart,

4  278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed

5  and thorough summary of facts and conflicting clinical evidence, stating his

6  interpretation thereof, and making findings) (citations and quotations omitted).

7  "Broad and vague" reasons for rejecting a treating physician's opinion do not

8  suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989).

9       When they are properly supported, the opinions of physicians other than

10  treating physicians, such as examining physicians and nonexamining medical

11  experts, may constitute substantial evidence upon which an ALJ may rely. See,

12  e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative

13  examiner's opinion on its own constituted substantial evidence, because it rested

14  on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying

15  medical expert opinions may serve as substantial evidence when "they are

16  supported by other evidence in the record and are consistent with it").

17          **2.    Analysis**

18       Plaintiff contends that the ALJ improperly rejected the opinions of his

19  treating orthopedist, Dr. Vahan Cepkinian. (Plaintiff's Motion at 10-12). The

20  Court concludes that the ALJ did not materially err in discounting Dr. Cepkinian's

21  opinions.

22       Plaintiff first argues that the ALJ erred by failing to list Dr. Cepkinian's

23  diagnosis of degenerative joint disease of the right ankle as one of plaintiff's

24  medical impairments. (Plaintiff's Motion at 10). Dr. Cepkinian noted that this

25  diagnosis was supported by an x-ray revealing ankle degeneration. (AR 322).

26  The x-ray itself does not appear in the record, but Dr. Cepkinian summarized it (in

27  full) as follows: "AP lateral and mortise views of the right ankle revealed

28  narrowing of the tibiotalar joint space with mild sclerosis of the joint surfaces. No

6

1    loose bodies were seen." (AR 333). The nonexamining medical expert, Dr. David

2    Brown, a rheumatologist, acknowledged that plaintiff's gout had affected his right

3    ankle (AR 54), but opined that his ankle symptoms were a consequence of the gout

4    rather than a separate impairment. (AR 55-56). He testified that the MRI and x-

5    ray findings were consistent with an acute flare-up of gout. (AR 56). Thus, Dr.

6    Brown's opinion constitutes substantial evidence supporting the ALJ's decision

7    not to list degenerative joint disease of the right ankle as one of plaintiff's

8    impairments. See Morgan, 169 F.3d at 600.

9           Even if the ALJ erred in failing to list degenerative joint disease as one of

10   plaintiff's impairments, the error was harmless. As mentioned above, Dr. Brown

11   acknowledged that plaintiff's gout impacted his right ankle. (AR 54-56). He

12   further opined that plaintiff's ankle involvement created "a problem with balance

13   . . . that may preclude him from working at dangerous heights or with equipment

14   or machinery that may be considered dangerous." (AR 61). The ALJ included the

15   limitations that plaintiff could only "occasionally balance" and "should not work

16   at heights or with dangerous equipment" in plaintiff's residual functional capacity.

17   (AR 18). Thus, the ALJ's assessment of plaintiff's residual functional capacity

18   accounted for plaintiff's ankle condition, even though the ALJ did not list

19   degenerative joint disease of the ankle as a separate impairment.

20          Plaintiff next challenges the ALJ's decision not to adopt Dr. Cepkinian's

21   assessment of his residual functional capacity. (Plaintiff's Motion at 11-12). Dr.

22   Cepkinian opined, among other things, that plaintiff could sit for one hour in an

23   eight-hour day; could stand or walk for zero hours in an eight-hour day; must "get

24   up and move around" every thirty minutes; could only lift five pounds

25   occasionally; could never carry any amount of weight; had "significant limitations

26   in doing repetitive reaching, handling, fingering or lifting"; had moderate

27   limitations in "[g]rasping, turning, [or] twisting objects"; had minimal limitations

28   in "[u]sing fingers/hands for fine manipulations"; had moderate limitations in

7

1   "[u]sing arms for reaching"; could not push, pull, kneel, bend, or stoop; would

2   need to take unscheduled breaks to rest as often as every thirty minutes; and would

3   likely miss work more than three times per month.  (AR 324-28).  In stark contrast,

4   the consultative examining physician, Dr. James Paule, found that plaintiff could

5   lift or carry fifty pounds occasionally and twenty-five pounds frequently; could sit,

6   stand, or walk for up to six hours in an eight-hour workday; and had "no postural,

7   manipulative, visual, communicative or environmental limitations."  (AR 285).

8   Dr. Brown generally concurred with the consultative examining physician's

9   assessment "[i]f [plaintiff's] gout was managed adequately."  (AR 61).

10         Because Dr. Cepkinian's opinion was contradicted by those of other

11   physicians, to reject it the ALJ was required to provide specific, legitimate reasons

12   that were supported by substantial evidence.  See Orn, 495 F.3d at 632.  The ALJ

13   did so.  The ALJ cited Dr. Brown's testimony that "in the hands of [an

14   appropriate] specialist, gout is a fairly straight-forward clinical management

15   problem that usually has a successful outcome."  (AR 21; see AR 63-65 (Dr.

16   Brown testifying, for example, that a typical flare-up "would not be anticipated to

17   extend over a period of several months . . . [but would] be more measured in terms

18   of weeks.")).  On the other hand, "[a]n orthopedist, such as Dr. Cepkinian would

19   not be as versed in treating consistently gout patients except when there is a flare

20   up that affects the joints. . . . An orthopedist would do very little in the way of

21   clinical management for gout."  (AR 21-22; see AR 23 ("Dr. Brown is a

22   rheumatologist and therefore a specialist with respect to treatment of gout;

23   whereas, Dr. Cepkinian is an orthopedist.")).  Indeed, the ALJ noted that

24   plaintiff's "June 2006 flare up with pain and swelling on the opposite side is

25   consistent with a patient whose gout has not been adequately managed," that

26   plaintiff apparently had "never received any intervention of oral steroids, or other

27   types of things for acute gout flare management," and that Dr. Cepkinian's

28   decision to order physical therapy was questionable because "[i]f there is no

8

1  clinical management of the gout, the physical therapy will aggravate the gout

2  condition because there is still soft tissue inflammation." (AR 22, 23; see AR 60,

3  62). In fact, plaintiff could not tolerate physical therapy because it was too

4  painful. (AR 22, 39, 46). That Dr. Cepkinian was practicing in an area typically

5  outside the scope of his specialization and may have been suboptimally managing

6  plaintiff's gout are specific and legitimate reasons for discounting his opinion.

7  See Holohan v. Massanari, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001); 20 C.F.R.

8  § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist

9  about medical issues related to his or her area of specialty than to the opinion of a

10  source who is not a specialist.").

11      In addition, the ALJ found that Dr. Cepkinian's opinion of plaintiff's

12  limitations was "not consistent with the medical record as a whole and with his

13  own records." (AR 23). For example, Dr. Cepkinian imposed limitations in

14  grasping and manipulating objects with the hands, but there was "no evidence in

15  the records of [plaintiff] having involvement of gout in the hands and/or fingers."

16  (AR 21; see AR 325-26). In addition, Dr. Cepkinian's own description of

17  plaintiff's "medical condition does not appear to justify [the] restriction of sitting

18  for only one hour or less in an eight-hour day," particularly where plaintiff

19  "contradict[ed] this statement in his hearing testimony when he stated that he

20  could sit for about two hours in an eight-hour day." (AR 23; see AR 44-45

21  (plaintiff testified that he could "[p]ossibly" sit for two hours "in a regular chair

22  with armrests" and that he is "in [his] recliner most of the time")). Inconsistency

23  with medical evidence is a specific and legitimate reason for discounting Dr.

24  Cepkinian's opinion. See Batson v. Commissioner of Social Security

25  Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ did not err.

26  ///

27  ///

28  ///

9

1   **B.**  **Plaintiff's Credibility**

2    **1.**  **Pertinent Law**

3   "To determine whether a claimant's testimony regarding subjective pain or

4 symptoms is credible, an ALJ must engage in a two-step analysis." <u>Lingenfelter v.</u>

5 <u>Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine

6 whether the claimant has presented objective medical evidence of an underlying

7 impairment 'which could reasonably be expected to produce the pain or other

8 symptoms alleged.'" <u>Id.</u> (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir.

9 1991) (en banc)).

10   "Second, if the claimant meets this first test, and there is no evidence of

11 malingering, 'the ALJ can reject the claimant's testimony about the severity of her

12 symptoms only by offering specific, clear and convincing reasons for doing so.'"

13 <u>Lingenfelter</u>, 504 F.3d at 1036 (citations omitted).  "In making a credibility

14 determination, the ALJ 'must specifically identify what testimony is credible and

15 what testimony undermines the claimant's complaints.'" <u>Greger v. Barnhart</u>, 464

16 F.3d 968, 972 (9th Cir. 2006) (citation omitted).   "The ALJ must cite the reasons

17 why the claimant's testimony is unpersuasive." <u>Orn</u>, 495 F.3d at 635 (9th Cir.

18 2007) (citation and quotation marks omitted).  In weighing credibility, the ALJ

19 may consider factors including:  the nature, location, onset, duration, frequency,

20 radiation, and intensity of any pain; precipitating and aggravating factors (e.g.,

21 movement, activity, environmental conditions); type, dosage, effectiveness, and

22 adverse side effects of any pain medication; treatment, other than medication, for

23 relief of pain; functional restrictions; the claimant's daily activities; and "ordinary

24 techniques of credibility evaluation." <u>Bunnell</u>, 947 F.2d at 346 (citing Social

25 Security Ruling ("SSR") 88-13[4]; quotation marks omitted).  The ALJ may consider

26 ————————————

27   [4]Social Security rulings are binding on the Administration.  <u>See</u> <u>Terry v. Sullivan</u>, 903

28 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social
 Security Administration and are entitled to some deference as long as they are consistent with the
                                (continued...)

1  (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies

2  between a claimant's statements and activities; (c) exaggerated complaints; and

3  (d) an unexplained failure to seek treatment. <u>Thomas</u>, 278 F.3d at 958-59. If

4  properly supported, the ALJ's credibility determination is entitled to "great

5  deference." <u>See</u> <u>Green v. Heckler</u>, 803 F.2d 528, 532 (9th Cir. 1986).

6                    **2.    Analysis**

7        Plaintiff contends that the ALJ improperly evaluated the credibility of

8  plaintiff's subjective complaints. (Plaintiff's Motion at 12-15). The Court

9  disagrees.

10        The ALJ found that plaintiff's "medically determinable impairments could

11  reasonably be expected to produce the alleged symptoms, but that [plaintiff's]

12  statements concerning the intensity, persistence and limiting effects of these

13  symptoms are not entirely credible." (AR 21). There was no evidence of

14  malingering, but the ALJ provided several reasons for discounting plaintiff's

15  credibility. First, the ALJ found that plaintiff's "failure to seek appropriate regular

16  medical treatment for his gout condition reduces his credibility." (AR 21). As

17  discussed above, Dr. Brown testified that a rheumatologist or other appropriate

18  physician can typically manage gout to be a well-controlled disease with flare-ups

19  lasting only for a period of weeks, not several months. (<u>See</u> AR 21, 65). Plaintiff,

20  however, has consistently relied upon his orthopedist to manage his gout, despite

21  his complaints of persistent and disabling pain. (AR 21-22). Dr. Brown pointed

22  to numerous deficiencies in the orthopedist's management of plaintiff's gout (AR

23  54, 58-59, 61-62), and the ALJ found, for example, that plaintiff "should have

24  been treated for the gout condition" instead of having "been sent for physical

25  therapy." (AR 22). Plaintiff correctly points out that the ALJ's statement that "it

26  was recommended that the claimant see a specialist, but there was never any

27

28        [4](...continued)
    Social Security Act and regulations. <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 n.6 (9th Cir.
    2007) (citing SSR 00-4p).

1  follow up" (AR 22) appears to be incorrect.  (Plaintiff's Motion at 13).  However,

2  the record reflects only that plaintiff's orthopedist once referred him to a

3  rheumatologist and the rheumatologist was apparently awaiting lab results in June

4  2006.  (AR 298-99).  There is no evidence that plaintiff routinely sought treatment

5  from a rheumatologist.  That plaintiff may have seen a rheumatologist once does

6  not detract from the ALJ's conclusion that plaintiff did not "seek appropriate

7  regular medical treatment for his gout condition."  (AR 21).  It was permissible for

8  the ALJ to conclude that if plaintiff's symptoms were as disabling as he testified,

9  he would have sought treatment from a physician well-versed in the management

10  of gout.  The ALJ properly relied on this reason for discounting plaintiff's

11  credibility.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

12      The ALJ also found that plaintiff's "non-compliance reduces his

13  credibility."  (AR 22).  Specifically, plaintiff "has a history of regular

14  consumption" of alcohol even though "he was aware that if he stopped drinking, it

15  would help with the gout."  (AR 22; see AR 41-43).  Plaintiff stated to an

16  examining physician in 2006 that he has had gout for fifteen years.  (AR 280).

17  Nonetheless, he testified that he had been drinking up to a quart of vodka per week

18  as late as March 2006.  (AR 41-42).  In addition, plaintiff testified that he stopped

19  drinking after his hospitalization in March 2006 (AR 42-43), but in July 2007 he

20  admitted to a physician that he had been drinking alcohol when he visited an

21  emergency room.  (AR 22, 313-14).  It was permissible for the ALJ to infer that

22  plaintiff would have discontinued drinking alcohol if his pain were as severe as he

23  testified.  The ALJ properly relied on this reason for discounting plaintiff's

24  credibility.  See Fair, 885 F.2d at 603.

25      The ALJ's other reasons for discounting plaintiff's credibility are not as

26  persuasive, but they do not detract from the ALJ's ultimate credibility

27  determination.  See Carmickle v. Commissioner of the Social Security

28  Administration, 533 F.3d 1155, 1162 (9th Cir. 2008).  The ALJ did not err.

1

### C.    New Evidence

2      Finally, plaintiff argues that remand is required for the consideration of new

3  evidence he submitted following the ALJ's decision.  The Appeals Council

4  received this evidence but did not find that it "provide[d] a basis for changing the

5  [ALJ's] decision."  (AR 2).  The Court agrees.

6      A district court may remand a case in light of new evidence presented to the

7  Appeals Council if the plaintiff demonstrates that:  (1) "the new evidence is

8  material to a disability determination;" and (2) the "claimant has shown good

9  cause for having failed to present the new evidence to the ALJ earlier."  <u>Mayes v.</u>

10  <u>Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g)).

11  Evidence is material if there is a "reasonable possibility" that it would have

12  changed the ALJ's decision.  <u>See</u> <u>Booz v. Secretary of Health & Human Services</u>,

13  734 F.2d 1378, 1380-81 (9th Cir. 1984).  Plaintiff relies on treatment notes and an

14  impairment questionnaire from his treating psychiatrist, Dr. Schneider, to make

15  this showing.  (Plaintiff's Motion at 16 (citing AR 339-43, 373-80)).  Dr.

16  Schneider diagnosed plaintiff with major depressive disorder, single episode, and

17  opined that he had mild and moderate limitations in certain functional areas.  (AR

18  373-78).  However, Dr. Schneider answered "no" in response to the question "Are

19  your patient's impairments ongoing, creating an expectation on your part that they

20  will last at least twelve months?"  (AR 379).  Plaintiff's own treating psychiatrist

21  thus did not believe that his depression would meet the durational requirement to

22  qualify as a disability.  <u>See</u> 42 U.S.C. § 423(d)(1)(A).  Therefore, the new

23  evidence would not likely alter the ALJ's decision.  Remand is not warranted on

24  this basis.

25  ///

26  ///

27  ///

28  ///

1

**V.     CONCLUSION**

2         For the foregoing reasons, the decision of the Commissioner of Social

3  Security is affirmed.

4         LET JUDGMENT BE ENTERED ACCORDINGLY.

5  DATED:  July 27, 2010

6                                        _____/s/_____

7                                        Honorable Jacqueline Chooljian
                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28